UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| CHIEF ADMINISTRATIVE OFFICER OF THE OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION, DIVISION OF INDUSTRIAL RELATIONS OF THE DEPARTMENT OF BUSINESS AND INDUSTRY, STATE OF NEVADA, Petitioner, v. SAVAGE SERVICES CORPORATION, Respondent. | Case No. 3:19-cv-00147-LRH-WGC ORDER |

Petitioner ("NOSHA") has appealed the ruling of the Nevada Occupational Safety and Health Review Board ("Review Board"), which dismissed its administrative safety citation of respondent Savage Services Corporation ("Savage") for want of jurisdiction. In addition to its appeal, NOSHA has also filed a motion to remand the action back to Nevada state court (ECF No. 18). For the reasons stated below, the Court denies NOSHA's motion to remand and affirms the decision of the Review Board.

**I. Factual Background and Procedural History**

This administrative appeal concerns whether employers must provide fall protection equipment to their employees when they work atop railcars and other similar containers in railyards. As part of its business offerings, Savage (a Utah corporation) provides services to railcar owners in a railyard in Elko, Nevada. (ECF No. 19 at 7; No. 25 at 11). Savage does not own the

1

railcars or the railyard. (*Id.*) In providing these services at the Elko railyard, Savage's employees sometimes need to be on top of railcars that are not adjacent to any buildings or structures. (*Id.*) Savage claims that despite providing services in fifty locations nationwide, none of its employees has ever fallen from atop a railcar. (*Id.* at 12). Savage also asserts that even though the Federal Railroad Administration ("FRA") conducts annual inspections of its worksites, it has never been cited for inadequate fall protection. (*Id.*)

On November 27, 2017, NOSHA conducted an inspection of Savage's worksite at the Elko railyard, which it asserts was the product of an "anonymous referral" alleging that Savage's employees were working on top of railcars without fall protection. (ECF No. 19 at 7). NOSHA subsequently issued a safety citation to Savage for that reason on January 18, 2018, pursuant to the "General Duty Clause" codified in NRS 618.375. (*Id.* at 8). Nevada's General Duty Clause, which is similar to its federal counterpart (29 U.S.C. §654), requires employers to, *inter alia*, provide employees with a safe working environment free from hazards that are likely to cause death or serious physical harm. It also requires employers to use safety devices and other safeguards to meet that goal. The citation required Savage to pay a fine and incorporate fall protection equipment into its business services in Elko within a month. (ECF No. 25 at 12).

Savage contested the citation, resulting in a hearing before the Review Board on December 13, 2018. (ECF No. 19 at 8). During the hearing, Savage argued that NOSHA lacked jurisdiction to issue it a citation for improper fall protection because the FRA preempts both federal and state OSHA agencies from promulgating rules affecting railroad workers when they operate on top of railcars. (ECF No. 1-2 at 3). The Review Board ultimately agreed, ruling on January 29, 2019, that FRA preemption prevented it from exercising jurisdiction over NOSHA's citation of Savage. (*Id.* at 5–6). NOSHA filed a motion for reconsideration on February 11, 2019, arguing that newly discovered evidence demonstrated that NOSHA and the FRA have concurrent jurisdiction over the issue of fall protection equipment for railroad workers. (ECF No. 25 at 15). NOSHA pointed to search results from an online database that allegedly showed federal OSHA citations concerning fall protection equipment on railcars and an email from Scott Woolstenhume, an FRA employee in California, which allegedly stated that it was the FRA's position that it had concurrent

2

jurisdiction with NOSHA. (*Id.* at 15–16). Before the Review Board could conduct a hearing, NOSHA filed a petition for judicial review of the Board's original January 29, 2019 decision in Nevada state court. Because NOSHA's petition for judicial review stripped the Review Board of jurisdiction to rule on the motion for reconsideration, the most it could do was certify to the state court how it would have ruled on the motion. (ECF No. 1-4 at 5).

Savage removed the case from state court to this Court on March 14, 2019. (ECF No. 1). On March 27, 2019, the Review Board certified to the reviewing court that it would have denied NOSHA's motion to reconsider. (ECF No. 19 at 9). It found that NOSHA failed to demonstrate how its failure to present the "newly discovered" evidence was excused by an exercise of reasonable diligence. (ECF No. 1-4 at 7–8). In particular, the Review Board found that even if NOSHA had been able to demonstrate reasonable diligence, the new evidence it sought to introduce was merely "unsworn observations of counsel." (*Id.* at 7). Before the Court now is NOSHA's motion to remand (ECF No. 18) and judicial review of the Review Board's decision.

## II. Legal Standard

### A. Motion to Remand

Under 28 U.S.C. §1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. §1441(a). Removal of a case to district court may be challenged by motion, and a federal court must remand a matter if there is a lack of jurisdiction. 28 U.S.C. §1441. Removal statutes are construed restrictively and in favor of remanding a case to state court, and it is the burden of the defendant to show that removal is proper. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-109 (1941); *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir. 1992).

### B. Administrative Review

Nevada judicial review of state agency decisions is similar to review of federal agency decision. Pursuant to NRS 233B.135, a court may review a Nevada agency's final decision, but the court's review must be confined to the administrative record. *Pentecostal Church of God v.*

3

*Douglas County*, 2018 WL 1611184, at *5 (D. Nev. Apr. 2, 2018). The reviewing court cannot reweigh the evidence, but it may set aside an agency decision if the decision: (1) violates constitutional provisions; (2) is clearly erroneous in view of reliable, probative, and substantial evidence; (3) is affected by an error of law, or (4) is arbitrary, capricious, or an abuse of discretion. NEV. REV. STAT. § 233B.135(2)–(3). "Substantial evidence" means "evidence which a reasonable mind might accept as adequate to support a conclusion." *Id.* at (4). Substantial evidence may be shown inferentially if certain evidence is absent. *Wright v. State, Dep't of Motor Vehicles*, 110 P.3d 1066, 1068 (Nev. 2005). A state agency's ruling on a question of law is persuasive but not entitled to deference. *Sierra Pacific Industries v. Wilson*, 440 P.3d 37, 40 (Nev. 2019).

### III. Discussion

### A. NOSHA's Motion to Remand (ECF No. 18)

Before addressing the merits of NOSHA's petition for judicial review, the Court must first determine if NOSHA is correct in arguing that removal to federal court was improper. Savage argues that pursuant to the Supreme Court's decision in *City of Chicago v. International College of Surgeons*, 522 U.S. 15 (1997), federal courts have jurisdiction to review state administrative decisions when the decision presents a substantial question of federal law. (ECF No. 21 at 5). And because the Review Board dismissed NOSHA's citation with prejudice on the basis that the FRA preempts state OSHAs from regulating some issues related to railroad worker safety, the Review Board's decision presents an important question of federal law. (*Id.*) NOSHA responds by arguing that because neither the FRA nor Congress has prohibited the promulgation of regulations addressing fall equipment for railroad workers on top of train cars, state OSHAs have concurrent jurisdiction with the FRA to regulate that area. (ECF No. 22 at 9). NOSHA also asserts that concurrent jurisdiction is demonstrated through the evidence that it presented but that the Review Board failed to consider, such as the Woolstenhume email.

In *City of Chicago*, the respondents challenged a decision by a historical landmarks commission to designate two buildings they hoped to renovate as historical landmarks, thereby preventing any possible construction. 522 U.S. 156, 159–60 (1997). The commission denied the respondents' request for a renovation exception, and they eventually filed a petition for judicial

4

review in Illinois state court. *Id*. at 160. Among other claims, the respondents pleaded violations of the Due Process and Equal Protection clauses of the U.S. Constitution and requested judicial review of the commission's decision. *Id*. The City of Chicago eventually removed the case to federal court. *Id*. at 161. The Supreme Court held that the removal was proper because even if state law creates a party's cause of action, the case may still arise under federal law if the "right to relief under state law requires resolution of a substantial question of federal law." *Id*. at 164. The Supreme Court further expounded on this doctrine in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, explaining that federal jurisdiction exists where: (1) the state claim necessarily states a federal issue; (2) the issue is actually disputed and substantial, and (3) the federal court can decide the issue without encroaching on the purview of the state court. 545 U.S. 308, 313–14 (2005).

This is precisely the case here. The Review Board based its order of dismissal with prejudice on its belief that the FRA had exclusive jurisdiction over promulgating safety regulations for workers operating on top of railcars. (ECF No. 1-2 at 5–6). Whether the FRA or any federal agency has exclusive jurisdiction over a matter is a clear question of federal law. *Gallo Cattle Co. v. U.S. Dep't. of Agriculture*, 159 F.3d 1194, 1198 (9th Cir. 1998); *Kashkool v. Chertoff*, 553 F.Supp.2d 1131, 1135 (D. Ariz. 2008). To resolve NOSHA's petition, the Court necessarily must decide whether the FRA has exclusive jurisdiction over the type of safety regulations in dispute here. The issue is also contested, as NOSHA has maintained throughout the entire administrative and judicial process that it, at worst, has concurrent jurisdiction with the FRA to regulate railcar safety. Finally, a decision by this Court would not encroach the authority of the Nevada state courts because it is the task of the federal courts, not state courts, to determine the scope of a federal agency's rulemaking authority. *Tomasi v. Twp. of Long Beach*, 364 F.Supp.3d 376, 388 (D.N.J. 2019) (citing *Fed. Nat'l Mortg. Ass'n v. LeCrone*, 868 F.2d 190, 193 (6th Cir. 1989)).

NOSHA's arguments to the contrary are unavailing. The fact that the FRA has not promulgated any rules requiring safety equipment for workers operating on top of railcars does not change whether it has the exclusive authority to do so. (ECF No. 22 at 9). Nor does it change

the fact that the issue of whether it does have that exclusive authority is a substantial federal question that vests this Court with jurisdiction.

As Savage asserts, the procedural history of this case is quite similar to *Freeman v. Burlington Broadcasters, Inc.*, 204 F.3d 311 (2d Cir. 2000). There, following numerous complaints from disgruntled residents, the local zoning authority issued a notice of violation to the defendants for operating telecommunications equipment that interfered with the residents' radio equipment. *Id*. at 315. The local zoning board held an administrative hearing and ruled that although the evidence tended to show that the defendants had interfered with radio frequencies, the board could not penalize them because the federal government had exclusive jurisdiction to regulate the particular radio frequencies at issue. *Id*. The residents appealed the decision to state court under a Vermont statute permitting judicial review of administrative environmental decisions, and the defendants subsequently removed the case to federal court. *Id*. The Second Circuit held that the defendants' removal to federal court was proper because when the plaintiffs sought judicial review in state court, their cause of action centered on whether federal law preempted local law. *Id*. at 318. The Second Circuit concluded by stating that "we think the better approach is to permit removal when a litigant's initial entrance to a state court seeks a decision that an administrative ruling upholding a federal preemption defense is erroneous." *Id*.

The Court agrees with the Second Circuit and sees no meaningful difference between the facts of *Freeman* and the case at bar. Accordingly, the Court finds that there is federal question jurisdiction over the question whether the FRA preempts state OSHA enforcement of safety regulations for workers operating on top of railcars. NOSHA's motion to remand will be denied.

### B. Administrative Appeal

As the party contesting the Review Board's decision, it is NOSHA's burden to demonstrate that the state agency erred in some form when it found that it did not have jurisdiction to hear the safety citation. NEV. REV. STAT. §233B.135. In its petition, NOSHA does not state the applicable standard of review nor specifically explain how the Review Board erred pursuant to §233B.135. Instead, it once again argues that because Congress has not either expressly or impliedly preempted

state OSHA authority to regulate employees working on top of railcars, NOSHA was allowed to cite Savage for a lack of fall protection equipment. (ECF No. 19 at 16).

It is well-established that state laws that conflict with federal law are "without effect." *Altria Group, Inc. v. Good*, 555 U.S. 70, 76 (2008) (quoting *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981)). Congress can indicate its intent to preempt state laws through a statute's express language (express preemption) or through its structure and purpose (implied preemption). *Id*. If a federal law contains an express preemption clause, there is still a question of the what the "substance and scope" of Congress' displacement of state law is. *Id*. When preemption is implied, courts must look to see whether the scope of the statute indicates that Congress intended federal law to "occupy the legislative field" or if there is an actual conflict between state and federal law. *Id*. at 76–77. Therefore, the Court must begin its analysis by examining the operative legislation which, in this case, is the Federal Railroad Safety Act ("FRSA").

The FRSA provides that a "[s]tate may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters). . .prescribes a regulation or issues an order covering the subject matter of the State requirement." 49 U.S.C. 20106(a)(2). Even when the Secretary of Transportation has prescribed such a regulation, a state still may enforce a more stringent law or regulation when it: (1) is necessary to eliminate or reduce an essentially local safety or security hazard; (2) is not incompatible with a law, regulation, or order of the U.S. government, and (3) it does not unreasonably burden interstate commerce. *Id*. Savage points to an FRA policy statement issued in 1978 as evidence that the federal government has preempted safety regulations in the working area at issue here. (ECF No. 25 at 20). In relevant part, that policy statement related that the FRA and OSHA share regulatory authority over railroad working conditions with the FRA assuming primary authority in areas involving its special competence over "the safety of railroad operations." 43 Fed. Reg. 10583, 10585 (Mar. 14, 1978). "Safety of railroad operations" was defined as "conditions and procedures necessary to achieve the safe movement of equipment over the rails." *Id*. This also included "working surfaces," described as "ladders, stairways, platforms, scaffolds, and floor openings." *Id*. at 10587. And although OSHA regulations cover some

"working surfaces," those regulations are "generally" only applicable in "railroad offices, shops, and other fixed workplaces." *Id*. The OSHA rules do not apply to trains and other rolling equipment, repair facilities, ladders, platforms, other surfaces on signal masts, cantenary systems, railroad bridges, turntables, and walkways besides the tracks in yards or along the right-of-way. *Id*. This is because they are "areas which are so much a part of the operating environment that they must be regulated by the agency with primary responsibility for railroad safety." *Id*.

Both parties also discuss a 1996 memorandum issued by John B. Miles, a director working for OSHA.[1] The memo addressed OSHA's position on fall hazards from the tops of "rolling stock," such as train cars and hopper cars, following concern from the National Grain and Food Association that OSHA might issue citations to its inspectors for not utilizing proper fall protection equipment when working on top of railcars. The memo clarified that the "current fall protection standard in general industry…does not specifically address fall hazards from the tops of rolling stock," and that the new proposed standard "explicitly excludes rolling stock from coverage." The memo also noted that it would be inappropriate to cite exposure to fall hazards using the personal protection equipment standard "unless employees are working atop stock that is positioned inside of or contiguous to a building or other structure where the installation of fall protection is feasible." In essence, the memo stated that OSHA would not be citing employers from not providing its employees with fall protection equipment when working on top of a free-standing railcar.

Based on the above, the Court finds that federal law expressly preempts both state and federal OSHA regulation of fall protection equipment for railroad workers operating on top of rolling stock. The 1978 policy statement is clear in explaining that OSHA regulations do not apply to working surfaces atop trains and other free-standing rolling equipment, which is precisely the working area where NOSHA cited Savage for having what it deemed to be inadequate safety measures. 43 Fed. Reg. 10583, 10587 (Mar. 14, 1978). NOSHA never addresses the policy statement in its briefing, instead pointing to the Woolstenhulme email as evidence that NOSHA had concurrent jurisdiction with FRA to regulate equipment to be used on top of train cars. (ECF

---

[1] Memorandum from John B. Miles, Directorate of Enforcement Programs for the Occupational Safety and Health Administration to Regional Administrations (Oct. 18, 1996), https://www.osha.gov/laws-regs/standardinterpretations/1996-10-18.

8

No. 19 at 21). Even if this email was properly presented before the Review Board as evidence of concurrent jurisdiction (it was not), NOSHA has not demonstrated how an email from an FRA employee supersedes official statements issued by the FRA itself.

Several courts have interpreted the 1978 policy statement as it relates to FRA preemption of OSHA regulations. In *Velasquez v. Southern Pacific Transp. Co.*, the plaintiff was injured while working on a railroad bridge in a railroad yard. 734 F.2d 216, 217 (5th Cir. 1984). The district court allowed the plaintiff to argue at trial that the defendant shipping company negligently failed to provide safeguards in accordance with OSHA regulations, but the Fifth Circuit found that this was reversible error. *Id.* at 218. It held that pursuant to 1978 policy statement explicitly prohibiting OSHA regulations from applying to railroad bridges, those regulations simply did not apply to the plaintiff's situation and could not be relied on to demonstrate negligence at trial. *Id.*

Similarly, in *Cearley v. General American Transp. Corp.*, a railroad worker unloading chemicals from on top of a railroad tank car died after falling from the tank car. 186 F.3d 887, 889 (8th Cir. 1999). In the ensuing lawsuit, the decedent's family argued that the railings on the top of the tank car were not high enough to put the decedent's employer in compliance with OSHA regulations. *Id.* After examining various federal regulations and the 1978 policy statement, the Eighth Circuit found that the FRA had preempted OSHA regulation of fixed and stationary platforms on top of tank cars. *Id.* at 893.

NOSHA's attempts to distinguish these two analogous cases are unpersuasive; it argues that because the FRA has promulgated formal regulations concerning fall protection equipment, there can be no preemption. (ECF No. 26 at 11). Generally, deliberate agency inaction on an issue, such as a decision to not regulate, will not alone preempt state law. *Sprietsma v. Mercury Marine*, 537 U.S. 51, 65 (2002). But the Ninth Circuit has held that the FRA's rejection of a particular safety regulation may preempt state regulation on the same subject matter. *Burlington Northern R. Co. v. State of Mont.*, 880 F.2d 1104, 1107 (9th Cir. 1989). This holding accurately reflects Supreme Court case law. *See Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 178 (1978) (holding that where federal officials affirmatively determine that regulation is not appropriate, States "are not permitted to use their police power to enact such regulation."). This is the case here. Based on the

1978 policy statement, the FRA is clearly aware of the dangers imposed by falls from railcars. But whereas the FRA has implemented safety regulations concerning potential falls from other raised platforms in the railyard, it has not imposed similar regulations for falls from railcars. *See* 49 C.F.R. §§214.103, 214.105 (requiring fall protection equipment for railroad bridge workers when working twelve or more feet above the ground). The FRA has also implemented regulations, *inter alia*, concerning ladders and stairs on on-track maintenance machines (49 C.F.R. §214.519) and ladders and railings on railcars (49 C.F.R. §231.2). A conscious decision by the FRA not to impose a requirement that railroad workers atop railcars use fall protection equipment is not an invitation to NOSHA to impose such a requirement.

Also working against NOSHA's preemption argument is the fact that OSHA has repeatedly declined to adopt fall-protection regulations for railroad workers operating on top of railcars. As cited by Savage, in 2010, OSHA published a proposed rule concerning fall-protection equipment and walking-working surfaces. 75 Fed. Reg. 28862 (May 24, 2010). There, OSHA declined to adopt any regulation requiring fall protection equipment, instead requesting that interested parties provide it with more information before it considered a formal rule. *Id*. at 28867. Similarly, in a 2016 final rule concerning the same subject, OSHA summarized numerous comments it had received from said interested parties, many of whom supported OSHA regulation. 81 Fed. Reg. 82494, 82506–09 (Nov. 18, 2016). Even so, OSHA acknowledged that it only had authority to regulate matters that are not classified as "railroad operations," giving the example that it can regulate the loading and unloading of rolling stock by non-railroad employees off railroad property. *Id*. at 82509. OSHA once again declined to adopt fall protection regulations for workers operating atop rolling stock. The fact that NOSHA's federal counterpart has consistently refused to adopt such regulations is another strong indication that neither OSHA nor similar state agencies have the authority to do so. Accordingly, the Review Board was correct in finding that it did not have jurisdiction to hear NOSHA's citation of Savage. The Court therefore affirms its decision to dismiss the case with prejudice.

///

///

## IV. Conclusion

IT IS THEREFORE ORDERED that NOSHA's petition to remand the case to state court (ECF NO. 18) is **DENIED**.

IT IS FURTHER ORDERED that the decision of the Nevada Occupational Safety and Health Review Board is **AFFIRMED**. The Clerk of Court shall enter judgment accordingly.

IT IS SO ORDERED.

DATED this 2nd day of December, 2019.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE